Parker C. J.
The defendant entered into the mortgaged premises for conditions broken, in May, 1819, and on the 22d of April, 1822, this bill was filed. So that by virtue of the several statutes giving relief in equity the plaintiff would be entitled to redeem, unless the matter disclosed in the defendant’s plea, and afterwards put into the form of an amendment to the bill, is a legal bar to his claim.
*295 The plea sets forth, that in January, 1819, one King recovered judgment against the plaintiff for 1758 dollars, upon which he took out a writ of execution and caused the same to be satisfied in part oy a sale of the plaintiff’s equity of redemption in the abovementioned mortgaged estate, which equity was sold on the execution on the 31st of March, 1819, by Shubael Bell, a deputy sheriff, who on the first day of April, 1819, made his deed thereof in due form of law to King, who was the purchaser at the sale thereof; and that more than one year had elapsed from the time when the sale was made, to the time when the bill praying redemption was filed.
Supposing all the acts done upon the execution were legal and sufficient to convey the equity of redemption, according to the statute, the plaintiff nevertheless insists, that as the purchaser of the equity did not in fact redeem, and as his own original right to redeem was not foreclosed by three years’ possession after entry for condition broken, when the bill was filed, the original right remained in him and he ought now to be allowed to prevail on his bill.
This must depend upon the force and effect of the statute conveyance to the purchaser of the equity of redemption; if by that the whole right, interest and estate of the mortgager remaining in him after his several mortgages, passed to the purchaser, of course, although the estate should not be redeemed by the purchaser, the mortgager would not be. entitled to redeem, without re-acquiring the right by deed made during the existence of the purchaser’s right. The mortgager had by his own act parted with the legal estate, and by the provisions of the statute, equivalent in effect to his own deed, the equitable interest remaining in him had also passed away ; and for this he has in contemplation of law received a full consideration ; and to this his entire assent must be presumed, because the statute secured to him a right to redeem his equity so conveyed, within one year from the time when it was taken ; which if he had done, it would have restored him to his original rigjit of redemption within three years from the time of the mortgagee’s entry. But he chose not to redeem his equity, and the purchaser chose not to redeem from the *296 mortgages ; and the legal effect of this is, to vest an indefeasible estate in the mortgagee at the expiration of the time allowed for the purchaser of the equity to redeem.
This seems to give an advantage to the mortgagee, beyond what he would enjoy under his mortgages if no credit- or of the mortgager had interposed, but it works no injustice ; since the omission of the purchaser to redeem, the interest of the mortgager being suffered to remain in him without redemption, furnishes conclusive evidence that the estate did not exceed in value the several debts which it was mortgaged to secure. At any rate, at the time of filing the bill there was no manner of interest remaining in the mortgager, any more than if he had by his own deed for a valuable consideration conveyed his equity of redemption. Nor after the three years from the entry was there any right in King, the purchaser, so that after that time any deed from him would be nugatory.
But the principal ground of the plaintiff is, that there was no legal sale of the equity, because the official acts necessary to complete the purchaser’s title were not done by Bell, the deputy sheriff, who undertook to obtain legal satisfaction of the execution.
The equity was taken by Bell, duly advertised for sale and regular notice given thereof; the sale was properly conducted by him, and a deed was duly made, executed and delivered by him, which deed was afterwards recorded ; and on the back of the execution King, the judgment creditor, had acknowledged the receipt of 1650 dollars, by a deed of the equity of redemption so sold, he being the purchaser thereof. The equity was taken in execution on the 1st of March, 1819. The sale was made on the 31st day of the same month. The deed was executed on the first day of April of the same year, acknowledged on the third day of the same month, and registered on the 29th day of June following. All these facts and transactions are recited in the deed, so that parol evidence was not wanted for any purpose relating to the title".
The defect which is supposed to have rendered all this nugatory is, that no return was made by Bell himself of these *297 facts upon the execution, and that the execution itself was not returned into the clerk’s office until long after the proper return day thereof. Bell, the deputy sheriff, was taken sick soon after the levy of this execution, and died on the 29th of May, 1819, not having made any return of the execution into the clerk’s office, the same being returnable on the first Tuesday of April preceding, and not having in fact entered upon the execution his doings in relation to the sale of the equity. After his death the sheriff set forth all the facts above stated, in a certificate made by him on the back of the execution, and returned the same into the clerk’s office.
It is objected, that admitting the certificate of the sheriff is equivalent, under the circumstances, to a return made by Bell himself, yet the mere non-return by him into the clerk’s office on or before the return day, of itself vacates the title of the purchaser. This however cannot be maintained, there being nothing in the statute which makes such a return essential to the validity of the proceedings, and the common law deeming such a return wholly immaterial, if the process be final, upon which no judgment or other process is to be had, as a fieri fiadas, capias ad satisfaciendum, or habere facias seisinam. Com. Dig. Retorn, Fl. In Fulwood’s case, 4 Co. 67, it was resolved, that the execution of a liberate was well enough, although the writ was not returned ; so of habere fadas seisinam ; and generally of all writs of execution which are mere final process ; and further, where no inquest, was to be taken, but only land to be delivered, or seisin had, or goods sold &c., which are but matters in fact, these are good, although the writ is not returned.
No doubt it is the duty of the officer who has made service of any precept, to make return of it according to its terms, and an action will lie against him if he neglects this duty.[1] But if he, as a minister of the law, has executed it properly, the purchaser will not be defeated of his title merely because the execution was not filed in the clerk’s office on *298 the return day. Whether, if no return were ever made, the purchaser could maintain his title by showing the deed of the officer, and proving from that, or aliunde, that all legal steps had been taken to authorize the deed, is a question which need not now be decided, because there is in this case a return of the execution, coming from the clerk’s office, though it was not returned there on the day required by the precept itself.[1]
Had then the sheriff legal authority to make the certificate of the doings of his deputy on the execution ? We are all satisfied that he had. The deputy was his servant; his act was that of his master. The sheriff is answerable for all omissions as well as wrongs of his deputies. Knowing what has been done by his deputy, if the deputy dies or is removed before he certifies his doings, the sheriff may do it for him. He is responsible for the truth of what he declares in his certificate. There is not. only a privity, but in some cases a legal identity, between the sheriff and his deputies. If the deputy commits a tort, the sheriff is personally and directly answerable for it. He is supposed to superintend and supervise all the official acts of his deputies. He may complete what the deputy has begun, and may, we think, also make known by his certificate what the deputy has failed to certify, adopting the acts as his own, and being answerable in law for their verity. It is wholly unlike the case of a new and old sheriff in England, between whom there is no privity in fact or in law, but it resembles more the case of the sheriff and his bailiff, all acts done by the latter being imputable to the former, who makes the return as though the precept was executed by himself.
It has been argued, that if this practice is held to be legal, sheriffs may, without knowledge of the facts, undertake, for the benefit of one party, to supply omissions of his deputy, to the prejudice of others. But the sheriff may do like mis *299 cmef in precepts which he undertakes to execute himself, and every deputy may do it-in regard to every precept committed to him. The argument proves too much. The truth is, the law necessarily reposes great confidence in these officers, particularly in the sheriff, taking care to place guards around him, and to visit him with a severe responsibility.
In the case now before us there is no room for suspicion even of mistake, for every act necessary to vest the right of the plaintiff in King, the purchaser, was carefully set down and minutely recited in the deed made by Bell in his lifetime. On this the sheriff might well rely, being responsible for Bell’s acts and omissions, as well before as after the adoption of them by his certificate.

Bill dismissed.

Note. In the argument of this case, Stuart and Rand, for zhe plaintiff, cited, to show that the return was a nullity, The King v. The Sheriff of Middlesex, 4 East, 604 ; Com. Dig. Retorn, C 1 ; Clerk v. Withers, 1 Salk. 323; S. C. 6 Mod. 298 ; and to show that two persons might at the same time have a right to redeem, and that an interest remained in the plaintiff which gave him such right, Bigelow v. Willson, 1 Pick. 485 ; St. 1815, c. 137, § 3; Patch on Mortg. 192.
Hubbard, contra, referred as to this last point, to Patch, 194, and as to the sufficiency of the return, to Prescott v. Wright, 6 Mass. R. 22 ; Adams v. Robinson & Tr., 1 Pick. 461 ; Clerk v. Withers, 6 Mod. 290.

 But if a sheriff justifies under final process, it is not necessary to show it returned. Clark v. Foxcroft, 6 Greenl. 299.

 An execution levied on real estate must be returned into the clerk’s office in order to complete the title of the creditor; but the return will be good for this purpose, though made after the return day. Prescott v. Pettee, 3 Pick. 331 Emerson v. Towle, 5 Greenl. 197. See Bradford v. Earle, 4 Pick. 121 Clark v. Foxcroft, 6 Greenl. 296 ; M‘ Gregor v. Brown, 5 Pick. 170